UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN BRAME (#2007-0037972), | ) |
| Plaintiff, | ) Case No. 10 C 3441 |
| v. | ) Judge Suzanne B. Conlon |
| THOMAS J. DART, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shaun Brame, filed suit, *pro se*, against Defendants, Sheriff Thomas Dart, Dr. Carington and Kimberly Myers, alleging deliberate indifference to his medical care at Cook County Jail. Presently before the Court is the Defendants' motion for summary judgment. For the reasons stated in this order, Defendants' motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment shall be granted " if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## UNDISPUTED FACTS

Plaintiff has been detained at Cook County Jail (the Jail) as a pre-trial detainee since May 25, 2007. (Defs.' 56.1(a)(3) Statement 56.1(a)(3) ¶ 2.) Plaintiff has been taking the following psychotropic medications while detained at the Jail: Doxepin since May or June of 2007, Risperdal since June or July of 2007, and Prozac since sometime in 2007. (*Id.*, ¶¶ 4-7.) Plaintiff did not receive his psychotropic medications from September 20, 2008 through October 2, 2008. (*Id.*, ¶ 8.) Aside from this 12 period, Plaintiff was not provided his psychotropic medication for a three-day period in the middle of 2008. (*Id.*) Plaintiff has not suffered any interruption in receiving his psychotropic medications since October 2, 2008. (*Id.*, ¶ 9.)

In September and October of 2008, Plaintiff was also taking the following non-psychotropic medications: Rifampin (a muscle relaxer), folic acid pills (a treatment for exposure to tuberculosis), Docusate (a stool softener), Fluoxetine, Dilantin (a sezuire medication), and Naprosyn (a pain pill). (Defs.' 56.1(a)(3) Statement ¶ 10.) Plaintiff received his non-psychotropic medications during the

2

12 day-period in September/October of 2008 that he had not received his psychotropic medications. (*Id.*, ¶ 11.) Plaintiff has not suffered any interruption in the receipt of his non-psychotropic medications during his detention at the Jail, except for a few one or two day interruptions when the medication had to be re-prescribed or re-stocked . (*Id.*, ¶ 12.; Plaint.'s Response ¶ 12; Plaint. Dep. p. 57 line 11-p. 58 line 4.)

Plaintiff was housed in ABO Segregation from approximately September 19, 2008 through November 18, 2008, after he received a disciplinary ticket for striking another detainee with a crutch. (Defs.' 56.1(a)(3) Statement ¶ 13.) While housed in ABO Segregation, detainees are provided their medications "does by dose," whereby a nurse would come to the living units morning, noon and night to dispense the detainees' medications. (*Id.*, ¶ 14.) During his time in ABO Segregation, Plaintiff experienced stress from not sleeping, pain associated with a shoulder injury, and awareness issues. (Id.) Sometime between September 19, 2008 and September 22, 2008, Plaintiff attempted to commit suicide by swallowing a "handful" of his non-psychotropic medications. (Plaint.'s Dep. p. 66 line 1 - p. 67 line 14.) Plaintiff told one of the officers that he swallowed the pills, but the officer just responded, "So what? Everybody swallows pills." (Plaint.'s Dep. p. 67 line 17 - line 21.) Plaintiff remained in his cell where he threw-up three times. (Plaint.'s Dep. p. 68 line 4 - line 12.)

During the 12-day time frame in September/October of 2008 that Plaintiff did not receive his psychotropic medications, Plaintiff was seen by medical personnel at Cermak Health Services approximately three times to treat a hand fracture. (Defs.' 56.1(a)(3) Statement ¶ 15.)

Between May 26, 2007 and August 19, 2010, Plaintiff was seen by either psychiatric or medical personnel from Cermak Health Services approximately 56 times. (Defs.' 56.1(a)(3) Statement ¶ 16.) These medical visits would often include discussions between medical personnel

3

and Plaintiff regarding, but not limited to the following: how Plaintiff's medications were working, whether any medications needed to be updated or changed, and whether Plaintiff was suffering from any side effects from his medications. (*Id.*, ¶ 17.) During this time frame, Plaintiff received approximately thirteen blood tests. (*Id.*, ¶ 18.) The blood tests monitored, among other things, Plaintiff's cholesterol and Dilantin levels. (*Id.*, ¶ 19.)

Between July 27, 2007 and July 28, 2010, Plaintiff received numerous psychiatric and medical consultations. (Defs.' 56.1(a)(3) Statement ¶ 20.) These consultations included orthopedics, optometry, and dental appointments. (*Id.*)

Between July 20, 2007 and October 29, 2009, Plaintiff was seen by radiology approximately eleven times. (Defs.' 56.1(a)(3) Statement ¶ 21.) This included an x-ray of his hand on September 19, 2008. (*Id.* ¶ 22.)

Between May 25, 2007 and August 13, 2010, Plaintiff was seen by psychiatric personnel as part of a "psychiatric admission evaluation" on at least ten occasions. (Defs.' 56.1(a)(3) Statement ¶ 23; Plaint.'s Response ¶ 23.) During these psychiatric admission evaluations, Plaintiff discussed several issues with medical personnel, including, but not limited to: how he was doing medically and psychologically, whether his medications were working and if they need to be adjusted, and whether his current housing assignment was working. (*Id.*, ¶ 24.)

Kimberly Meyers has been employed at Cermak Health Services as a Mental Health Specialist II since 2005. (Defs.' 56.1(a)(3) Statement ¶ 26.) Plaintiff never spoke with or informed Myers that he was not receiving his psychotropic medications between September 20, 2008 and October 2, 2008. (*Id.*, 25.) Plaintiff went to speak with Myers on September 20, 2008, but she dismissed him because he entered her office without knocking. (Plaint.'s Response ¶ 25, Plaint.'s

Dep. p. 42 line 2 - p. 43 line 10). Aside from the instant lawsuit, Myers was never aware of Plaintiff's allegations that he went without his psychotropic medications between September 20, 2008 and October 2, 2008. (Defs.' 56.1(a)(3) Statement ¶ 28.) In her position as a Mental Health Specialist II, Myers does not have any role in policy making for Cermak Health Services. (*Id.*, ¶ 29)

Plaintiff has never met or been medically treated by Dr. David Carington. (Defs.' 56.1(a)(3) Statement ¶ 31.) Plaintiff has no evidence that Dr. Carington was ever made aware of his claims that he did not receive his medications. (*Id.*, ¶ 32.)

Thomas Dart is the Sheriff of Cook County. (Defs.' 56.1(a)(3) Statement ¶ 34.) Plaintiff has never met Sheriff Dart. (*Id.*, ¶ 35.)

## ANALYSIS

Plaintiff brings both individual and official capacity claims for the alleged denial of his medications.

### I. Individual Capacity Claims

Individual liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Although direct participation is not required, there must be at least a showing that the individual acquiesced in some demonstrable manner in the alleged constitutional violation. *See Palmer*, 327 F.3d at 594. For a supervisor, the personnel responsibility requirement of Section 1983 for an official is satisfied if the conduct causing the constitutional violation occurs at the

5

supervisors direction or with his knowledge and consent. *See Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some casual connection or affirmative link between the action complained about and the official sued is necessary for §1983 recovery." *Hildebrandt*, 347 F.3d at 1039 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth Amendment use the same standard for deliberate indifference to a serious medical need applied to Eighth Amendment claims for convicted prisoners. *See Williams*, 509 F.3d at 401. A deliberate indifference claim includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Guiterrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not sufficient under because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison

6

official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *Id.* The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez*, 111 F.3d at 1374-75.

### A. Serious Medical Need

A medical need is "serious" if has been diagnosed by a physician as mandating treatment or it so obvious that even a lay person would recognize the necessity of medical treatment. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The medical condition need not be life-threatening and includes a condition that could result in the unnecessary and wanton infliction of pain or result in further injury if not treated. *Id.*

Here, Plaintiff's medical condition, mental illness, was diagnosed as mandating treatment with prescription medications. Accordingly, Plaintiff has established that his medical condition was a serious medical condition for purposes of Section 1983 liability. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (need to treat mental illness held to be an objectively serious medical need).

### B. Deliberate Indifference

Plaintiff has failed to demonstrate that Sheriff Dart or Dr. Carrington acted with deliberate indifference to his medical needs. He has failed to demonstrate that either Defendant was involved with Plaintiff's medical treatment or that they were even aware that he was not receiving his psychotropic medications.

Plaintiff has also failed to demonstrate that Meyers' dismissal of Plaintiff on one occasion, without any knowledge of his medical/mental history, rose to a level of deliberate indifference. Plaintiff has not demonstrated that Meyers was aware of Plaintiff's mental health issues or that he was not receiving his medications. Importantly, Plaintiff's one contact with Meyers was on the first day that he had not received his medications; thus, at most, she could have only known that Plaintiff did not receive his medications on that one day.

Plaintiff argues that Meyers should have known he might commit suicide based on his medical file at the Jail. However, Plaintiff has not demonstrated that Meyers reviewed his medical file and/or failed to review the file when she should have done so. Meyers' dismissal of Plaintiff on one occasion without any previous exposure to Plaintiff, at most, can be considered negligent. However, negligence does not support a finding of deliberate indifference. *See Mathis v. Fairman*, 120 F.3d 88, 92 (7th Cir. 1997) (staff's failure to keep a closer eye on detainee that was behaving strangely may have constituted negligence but did not support a finding of deliberate indifference).

## II. Official Capacity Claims

Claims filed against government officers in their official capacity are actually claims against the government entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). A governmental entity is liable for damages under Section 1983 only if the plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978) Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled

as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000).

Plaintiff has failed to demonstrate that he did not receive his psychotropic medications for the twelve-day period as a result of an expressed policy, a widespread practice, or by a person with final policy-making authority. In fact, the undisputed facts demonstrate the opposite - that a policy is in effect for the distribution of medications and the receipt of medical care as demonstrated by the extensive care Plaintiff received between May 26, 2007 and August 19, 2010. In fact, since the incident, Plaintiff has not suffered any interruption in receiving his psychotropic medications since October 2, 2008. The one-time failure of the policy to work does not demonstrate an unconstitutional policy or custom. *See Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997); *Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986).

In conclusion, no material facts are in dispute, and Defendants have established that they are entitled to judgment as a matter of law. No reasonable trier of fact could find that Defendants acted with deliberate indifference to the Plaintiff's serious medical needs or that he was denied his psychotropic medications for a twelve-day period because of unconstitutional policy or custom. Accordingly, Defendants' motion for summary judgment is granted.

If Plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812

(7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [38] is granted. The Clerk is directed to enter judgment in favor of the Defendants. The case is terminated.

Dated: August 22, 2011

Suzanne B. Conlon
United States District Court Judge